**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| UNITED STATES *ex rel.* DEETTE DANIEL, *et al.*,<br><br>           Plaintiffs,<br><br>      v.<br><br>NOVO NORDISK INC.,<br><br>           Defendant. | )<br>)<br>)<br>)<br>)<br>)  Civil Case No. 21-55 (RJL)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM OPINION**
March 31 , 2026 [Dkt. #30, 31]

Relators DeEtte Daniel and Joshua Puckett (collectively, "Relators") bring suit on behalf of the United States and several individual states under the *qui tam* provisions of the False Claims Act ("FCA"), 31 U.S.C. § 3729, *et seq.*, and parallel state statutes. Relators allege that defendant Novo Nordisk Inc. ("Novo Nordisk") engaged in an extensive scheme to promote two of Novo Nordisk's diabetes drugs as treatment for weight loss—an "off-label use" not approved by the FDA—and thereby caused doctors to submit false reimbursement claims to federal healthcare programs, which do not typically reimburse off-label prescriptions. Novo Nordisk moves to dismiss Relators' complaint, arguing that Relators do not plead their fraud claims with the requisite particularity and do not adequately allege the required elements of an FCA claim. For the reasons described below,

1

I will **GRANT** Novo Nordisk's motion to dismiss Relators' complaint but will do so *without* prejudice.

## BACKGROUND

### I.    Factual Background

Novo Nordisk is a healthcare company and drug manufacturer that specializes in diabetes care. Compl. [Dkt. #1] ¶ 18. This case concerns two of its drugs: Ozempic and Rybelsus. Both drugs treat Type 2 diabetes by helping the body produce more insulin. Mot. to Dismiss [Dkt. #30] ("Mot.") at 2; Request for Judicial Notice ("RJN") Ex. 2 [Dkt. #31-2]. The drugs also suppress appetite and lead to weight loss, which can be beneficial for people with Type 2 diabetes. Mot. at 2; RJN Ex. 2. The U.S. Food & Drug Administration ("FDA") has approved Ozempic and Rybelsus to treat Type 2 diabetes (as well as diabetes-related cardiovascular and kidney disease) but not obesity. Mot. at 2–3; Compl. ¶ 3.

Relators Daniel and Puckett are former sales representatives at Novo Nordisk. Compl. ¶¶ 15–16. They allege that Novo Nordisk promoted Ozempic and Rybelsus to weight loss doctors as a treatment for obesity, an "off-label" use not approved by the FDA. *Id.* ¶¶ 69–70. They allege that Novo Nordisk thereby encouraged doctors to submit false reimbursement claims to federal and state healthcare programs, which typically only reimburse prescriptions for on-label uses. *Id.* ¶¶ 77–82.

More specifically, Relators describe an "integrated sales call program" consisting of in-person visits and marketing directed at 1,310 physicians who focus primarily on weight loss, not diabetes. *Id.* ¶ 74. The sales team allegedly pushed Ozempic and Rybelsus for

2

the purpose of "behavior modification," which is allegedly a shorthand for "weight loss treatment." *Id.* ¶ 75. In addition, sales representatives allegedly provided free samples, free meals, and discount coupons to induce these doctors to prescribe Ozempic and Rybelsus. *Id.* ¶¶ 74, 77. Sales executives were allegedly "aware of this off-label marketing and supportive of it," since it improved "sales performance in their regional territories." *Id.* ¶ 117. Relators estimate that the alleged off-label promotion scheme resulted in nearly $30 million in off-label prescriptions reimbursed by state or federal drug programs between 2018 and 2020. *Id.* ¶ 97.

The alleged smoking gun is a December 2020 email from Relators' manager that, according to Relators, implicitly acknowledges that the 1,310 weight loss doctors were wrongfully targeted for promotion. *Id.* ¶¶ 86–92; Compl. Ex. E [Dkt. #1-1]. The email lays out revisions to a 2021 sales call plan and divides the 1,310 doctors into three groups: (1) 466 doctors who "practice primarily in bariatric, obesity, or weight loss clinics"; (2) 166 doctors who had "both diabetes and obesity volume but the ratio of diabetes to obesity is lower"; and (3) 678 doctors who had obesity patients but were mostly focused on diabetes. Compl. ¶¶ 87–89 (quoting Compl. Ex. E). Relators allege that some of these doctors are "exclusively Weight Loss Doctors with no diabetes practice at all." Compl. ¶ 123; *see also* Compl. Ex. E at 2 (stating that the group of 466 doctors who practice "primarily" in weight loss "have obesity volume and no diabetes volume"). According to Relators, their manager's email "effectively conceded that Sales Representatives should not have marketed the Covered Drugs to at least those 466 Weight Loss Doctors" who practiced

exclusively in weight loss treatment. Pls.' Mem. in Opp'n to Mot. to Dismiss ("Opp'n") [Dkt. #34] at 6.

Relators allege they voiced their concerns to their superiors at Novo Nordisk and were punished for doing so. Relator Puckett's compensation was reduced, Compl. ¶ 109, while Relator Daniel was terminated, *id.* ¶ 102.

## II.    Procedural History

On January 7, 2021, Relators sued Novo Nordisk in this Court by way of a sealed complaint. *See* Compl. Relators' complaint asserts 34 causes of action under the federal FCA and several parallel state statutes. After multiple extensions, the United States and the individual states declined to intervene in August and September 2024, respectively. *See* United States's Notice of Election to Decline Intervention [Dkt. #12]; Named States' Notice of Election to Decline Intervention [Dkt. #17]. I then unsealed the complaint. *See* Minute Order (Oct. 28, 2024).

Novo Nordisk filed a motion to dismiss the complaint on February 4, 2025, *see* Mot. to Dismiss [Dkt. #30] ("Mot."), along with a request for judicial notice, *see* Request for Judicial Notice ("RJN") [Dkt. #31]. Relators filed their memorandum in opposition on February 18, 2025. *See* Opp'n [Dkt. #34]; Pls.' Mem. in Opp'n to Request for Judicial Notice ("Opp'n to RJN") [Dkt. #35]. Novo Nordisk filed its reply on February 25, 2025.

*See* Reply in Supp. of Mot. to Dismiss [Dkt. #36]. The motion to dismiss is now ripe for decision.[1]

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the allegations contained in the complaint allow the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

FCA claims are subject to the heightened pleading requirement of Rule 9(b), which requires a relator to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *United States ex rel. Winnon v. Lozano*, 146 F.4th 1197, 1211 (D.C. Cir. 2025). Rule 9(b) does not require "a detailed allegation of all facts supporting each and every instance of submission of a false claim," *United States ex rel. Barrett v. Columbia/HCA*

---

[1] I will grant Novo Nordisk's request for judicial notice with certain limitations. In deciding a motion to dismiss, the Court "may consider the facts alleged in the complaint, documents attached thereto or incorporated therein, and matters of which it may take judicial notice." *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007). The Federal Rules of Evidence provide that a court "may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). As for Exhibits 1, 3, 5, 6, 9, and 10, *see* RJN at 2–3, these are all federal agency materials available on government websites. Courts frequently take judicial notice of "information posted on official public websites of government agencies." *See Pharm. Rsch. & Mfrs. of Am. v. U.S. Dep't of Health & Human Servs.*, 43 F. Supp. 3d 28, 33 (D.D.C. 2014). I will do so here without limitation. As for Exhibits 2, 4, 7, 8, and 11, *see* RJN at 2–4, these are scientific and industry publications and press releases. For such materials, courts often take judicial notice of the fact of their publication, but "not for their truth." *See Farah v. Esquire Mag., Inc.*, 863 F. Supp. 2d 29, 35 (D.D.C. 2012); *In re Celexa & Lexapro Mktg. & Sales Pracs. Litig.*, 2015 WL 3751422, at *3 (D. Mass. June 15, 2015). I will take judicial notice of these materials, but not for the truth of the statements asserted therein.

5

*Healthcare Corp.*, 251 F. Supp. 2d 28, 35 (D.D.C. 2003), but relators must at least allege the "time, place, and manner" of the alleged fraud, *Lozano*, 146 F.4th at 1211 (quoting *United States ex rel. Heath v. AT&T, Inc.*, 791 F.3d 112, 123 (D.C. Cir. 2015)).

## ANALYSIS

Novo Nordisk argues that all of Relators' claims are inadequate and should be dismissed. Most of Relators' claims are premised on the alleged off-label promotion scheme as well as alleged kickbacks (Counts I–II and V–XXXIV). Realtors also bring two derivative claims—a "reverse FCA" claim (Count III) and a conspiracy claim (Count IV)— and two claims based on alleged retaliation (Counts XXXV and XXXVI).[2] For the reasons that follow, I conclude that each of these claims and theories are inadequately pled. I will therefore dismiss Relators' complaint in full without prejudice.[3]

## I.   Off-Label Promotion

Relators bring several claims premised on Novo Nordisk's alleged off-label promotion of Ozempic and Rybelsus. *See* Compl. ¶¶ 132–43, 160–388.[4] Novo Nordisk

---

[2] Relators also brought a claim under the Maryland False Health Claims Act (Count XVII), which was previously dismissed with prejudice. *See* Order [Dkt. #18] at 2.

[3] Because the infirmities described below may be corrected through an amended pleading, I will dismiss *without* prejudice and grant Relators their requested opportunity to amend the complaint. *See* Opp'n at 32; *see also Givens v. Bowser*, 111 F.4th 117, 123 (D.C. Cir. 2024) ("When dismissing a case for failure to state a claim, a district court should not dismiss the case with prejudice unless it has determined that an amendment would be futile.").

[4] Relators bring claims under both the federal FCA and parallel state statutes. Because the federal and state FCAs have "nearly identical" standards, *see United States ex rel. Ferrara v. Novo Nordisk, Inc.*, 2019 WL 4305503, at *5 n.5 (D.D.C. Sept. 11, 2019), and because the parties appear to agree that the same federal standards apply, *see* Mot. at 4 n.4, 5 n.5; Opp'n at 7 (applying federal FCA standards), I will analyze both the federal and state claims together. *See United States ex rel. Schneider v. J.P. Morgan Chase Bank, N.A.*, 224 F. Supp. 3d 48, 61 (D.D.C. 2016) ("Because Relator's State law claims rest on the same allegedly false allegations as the Federal FCA claim, . . . the State law claims will also be dismissed."). Moreover, while Counts I and II are under different sections of the FCA—Count I under 31 U.S.C. § 3729(a)(1)(A); Count

6

argues that these claims should be dismissed on two grounds. *First*, Novo Nordisk argues that Relators' off-label promotion allegations are not pled with the particularity required under Rule 9(b). *Second*, Novo Nordisk argues that Relators' allegations do not satisfy all elements of an FCA claim and therefore do not state a claim for which relief may be granted under Rule 12(b)(6). Unfortunately for Relators, I agree with Novo Nordisk that the off-label promotion claims are inadequately pled. How so?

### A.    Federal Rule of Civil Procedure 9(b)

Novo Nordisk argues that Relators' allegations run afoul of Rule 9(b)'s "heightened pleading requirement" for fraud claims. *See United States ex rel. Riedel v. Bos. Heart Diagnostics Corp.*, 332 F. Supp. 3d 48, 64 (D.D.C. 2018). According to Novo Nordisk, "Relators fail to include a *single* allegation as to any person (the '*who*') who made any statement promoting either Ozempic or Rybelsus off-label for weight loss (the '*what*') to any doctor or in any weight loss clinic (the '*where*') on any particular date (the '*when*')." Mot. at 8. Relators, on the other hand, contend that they plead each of these elements with the requisite particularity. Opp'n at 9–14.

"FCA fraud follows a basic formula: the elements are 'who, what, when, and where' detailing the circumstances of the fraud scheme." *Lozano*, 146 F.4th at 1208–09 (quoting *Heath*, 791 F.3d at 124). "The 'who' is the fraudster; the 'what' is the scheme itself; and, the 'when' and 'where' are the scheme's temporal and geographic coordinates." *Id.* at 1209. Here, although Relators have adequately alleged the "who," "where," and "when"

---

II under 31 U.S.C. § 3729(a)(1)(B)—these sections have "practically identical" elements and will be analyzed together. *See Si v. Laogai Rsch. Found.*, 71 F. Supp. 3d 73, 87 (D.D.C. 2014).

7

of the off-label promotion scheme, the "what" element has not been adequately alleged because Relators fail to provide a "detailed identification" of the content of the alleged off-label promotion. *Riedel*, 332 F. Supp. 3d at 78. Accordingly, Relators' off-label promotion claims must be dismissed.

As to "who" drove the alleged fraud, Relators point to the Sales Department of Novo Nordisk, including specific sales representatives and sales management executives that, according to Relators, were "aware of" and "supportive of" the off-label marketing scheme. Compl. ¶ 117. Relators identify several Novo Nordisk employees who allegedly participated in the scheme, *see id.* ¶¶ 86, 100, 105, 106, and identify sales management executives in a specific region: Northern Virginia, *see id.* ¶¶ 112–17. By pointing to specific corporate components that allegedly participated in or supported the scheme, Relators have alleged with particularity that "corporate levers were pulled." *Heath*, 791 F.3d at 125 (requiring realtors to "alleg[e] with specificity how the company itself institutionalized and enforced its fraudulent scheme"). That is all that is required at this stage of the litigation. *See Riedel*, 332 F. Supp. 3d at 76 (finding "who" element satisfied where complaint identifies "specific, high-level employees" who "allegedly participated in the schemes"); *United States ex rel. Scott v. Pac. Architects & Eng'rs, Inc.*, 270 F. Supp. 3d 146, 154 (D.D.C. 2017) (finding "who" element satisfied where complaint identifies "some of the employees involved" in promoting fraudulent billing practices).

As to "where" and "when" the fraud occurred, Relators identify a set of 1,310 weight loss doctors in Virginia targeted by Novo Nordisk, *see* Compl. ¶¶ 86–87, 111 & Ex. E, and Relators allege these doctors were targeted from January 1, 2018 to the present day, *see*

8

Compl. ¶ 111. Relators further isolate the 466 doctors who "practice primarily in bariatric, obesity, or weight loss clinics" but received regular promotions from sales representatives, *id.* ¶ 87, and the complaint specifically identifies two doctors by name, *see id.* ¶¶ 112–13, 123. While Relators do not identify any single doctor who was visited by a sales representative and then submitted an off-label prescription for reimbursement, "precise details of individual claims are not, as a categorical rule, an indispensable requirement of a viable False Claims Act complaint." *Heath*, 791 F.3d at 126.

As to the "what" of the alleged fraud, however, Relators' allegations are insufficiently particularized. Rule 9(b) requires a "detailed identification" of the substance of the fraudulent scheme so to "put [the defendant] on fair notice of the fraud of which it is accused." *Heath*, 791 F.3d at 124; *see also United States ex rel. Williams v. Martin-Baker Aircraft Co.*, 389 F.3d 1251, 1256 (D.C. Cir. 2004) (requiring FCA relator to "state the time, place and *content* of the false misrepresentations" (emphasis added)). As such, in similar off-label promotion cases, courts have required relators to allege the "content" of the alleged off-label promotion. *See, e.g., United States ex rel. Modglin v. DJO Glob. Inc.*, 114 F. Supp. 3d 993, 1015 (C.D. Cal. 2015), *aff'd*, 678 F. App'x 594 (9th Cir. 2017); *United States ex rel. Keeler v. Eisai, Inc.*, 568 F. App'x 783, 785–86 (11th Cir. 2014).

As Novo Nordisk correctly points out, Relators have not "detail[ed] the content of *any communication* between [a Novo Nordisk] sales representative and a single doctor, much less content of such a communication that constitutes off-label promotion." Mot. at 9. The only concrete allegation as to the content of the alleged off-label promotion is that Novo Nordisk sales representatives used "the misnomer of 'behavior modification'"

9

to promote Ozempic and Rybelsus to weight loss clinics as a "weight loss treatment." Compl. ¶ 75; *see also* Opp'n at 11 (describing "'behavior modification' as code for weight loss treatment"). But Relators do not allege with any specificity *how* the words "behavior modification" alone constitute off-label promotion or *how* sales representatives used those two words to encourage doctors to write off-label prescriptions.

Rule 9(b) requires more specificity about the "particular details" of the alleged off-label promotion. *Heath*, 791 F.3d at 126; *see also, e.g.*, *Modglin*, 114 F. Supp. 3d at 1015–16 (relators sufficiently alleged "content" of fraudulent scheme where they alleged a "corporate-wide policy and practice to train . . . representatives to tell physicians that all stimulators are the same and therefore that their lumbar devices could be safely used on the cervical spine"). For example, in *United States ex rel. Gardner v. Vanda Pharmaceuticals, Inc.*, 554 F. Supp. 3d 146 (D.D.C. 2021), an alleged off-label promotion scheme satisfied Rule 9(b) where the complaint explained "*in detail* . . . how the company went about training its sales force" to use a specific set of "criteria to convince well-intentioned psychiatrists" that their patients had a particular condition and would therefore benefit from the defendant's drug. *Id.* at 165 (emphasis added). Here, Relators provide only vague allegations about a single phrase—"behavior modification"—without any details on *how* this phrase was used to promote Ozempic and Rybelsus to weight loss clinics as a "weight loss treatment." Compl. ¶ 75. Lacking the particularity required under Rule 9(b), Relators' off-label promotion claims must be dismissed.

## II.    Kickbacks

Relators also bring FCA claims premised on violations of the federal Anti-Kickback Statute ("AKS"), 42 U.S.C. § 1320a-7b(b)(2)(B), which prohibits offering or paying any "kickback, bribe, or rebate . . . to any person to induce such person" to purchase any good or service that may be reimbursed under a federal healthcare program. *Id.* Relators claim that Novo Nordisk engaged in an unlawful kickback scheme to induce doctors to write off-label prescriptions for Ozempic and Rybelsus and seek reimbursement under federal healthcare programs, thus resulting in false claims being submitted to the Government. *See* Compl. ¶¶ 7, 74, 77–82, 122, 124. Novo Nordisk argues this scheme is inadequately pled because (1) Relators have not adequately alleged "kickbacks" in violation of the AKS and (2) Relators have not adequately alleged that false claims "resulted from" those kickbacks. Unfortunately for Relators, I agree with Novo Nordisk that Relators' AKS-based claims must be dismissed.

To establish FCA liability on an AKS violation, a relator must plead with particularity that a false claim "result[ed] from" that AKS violation. 42 U.S.C. § 1320a-7b(g); *see also Lozano*, 146 F.4th at 1212 ("[A] *qui tam* relator may invoke the FCA as a vehicle for pursuing claims arising from AKS . . . violations, but only when those violations *result in* the submission of false claims to the federal government." (emphasis added)). Relators must do more than "offer some particular details" about a kickback scheme. *Lozano*, 146 F.3d at 1214. Instead, Rule 9(b) "requires a bridge between those details and the submission of false claims." *Id.* (citing *Heath*, 791 F.3d at 126); *cf. United*

11

*States ex rel. Martin v. Hathaway*, 63 F.4th 1043, 1052 (6th Cir. 2023) ("resulting from" language in AKS requires "but-for causation").

Relators allege that Novo Nordisk offered "extensive meals," "free samples," and "discount coupons" to induce doctors to prescribe Ozempic and Rybelsus for off-label uses. Compl. ¶ 77. This scheme, however, lacks many specifics. As Novo Nordisk points out, *see* Mot. at 17, the scheme boils down to three specific allegations about supposed kickbacks given to providers: a paid lunch at a Virginia weight loss clinic, Compl. ¶ 114; the provision of additional lunches, samples, and discount cards to that same weight loss clinic, *id.* ¶ 124; and distribution of discount cards to clinics in Texas, *id.* ¶ 118.

Even assuming these threadbare allegations qualify as AKS violations, Relators have not provided any "reliable indicia" that these AKS violations "led to false claims." *Lozano*, 146 F.4th at 1214 (quoting *Heath*, 791 F.3d at 126). Indeed, Relators do not identify a single doctor that received a kickback and then submitted an off-label prescription for reimbursement. In *Lozano*, for example, our Circuit rejected a similar pleading that "fail[ed] to identify any specific agreements conditioning [renumeration] on referrals" and did not "explain how" the alleged kickbacks "resulted in claims submitted to Medicare or Medicaid." *Id.* at 1213–14, 1215 (rejecting AKS claims based on "marketing gifts" where complaint provided no "concrete allegations connecting the renumeration to actual false claims"). This fundamental failure to allege with particularity how the kickbacks resulted in the submission of false claims dooms Relators' FCA claims based on alleged AKS violations. Accordingly, those claims must be dismissed.

12

### III.    Derivative Claims

Novo Nordisk next argues that Relators' derivative claims for reverse false claims (Count III) and conspiracy (Count IV) independently fail and should be dismissed. I agree.

Relators allege liability on a "reverse" FCA theory under 31 U.S.C. § 3729(a)(1)(G), which creates liability for any person who "knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government." *Id.* Relators do not provide any additional allegations to support their reverse FCA theory, relying only on their presentment allegations described above. However, courts routinely reject "reverse" FCA theories "where the 'reverse' claim would merely duplicate the presentment claim." *United States ex rel. Morsell v. Symantec Corp.*, 471 F. Supp. 3d 257, 307 (D.D.C. 2020) (quoting *Si v. Laogai Rsch. Found.*, 71 F. Supp. 3d 73, 97 (D.D.C. 2014)); *see also Riedel*, 332 F. Supp. 3d at 82–83. Relators do not dispute that their reverse FCA claim should be dismissed. Opp'n at 24. Accordingly, Count III will be dismissed without prejudice.

In addition, Relators allege that Novo Nordisk engaged in a conspiracy to violate the FCA. Novo Nordisk says this count fails for a few reasons, including that the underlying allegations are not sufficiently pled and that the intra-corporate conspiracy doctrine forecloses Relators' theory of liability. Mot. at 23. Relators again do not dispute that this claim should be dismissed. Opp'n at 24. Accordingly, Count IV will be dismissed without prejudice.

## IV.    Retaliation

Relators finally bring retaliation claims, *see* Compl. ¶¶ 389–400, but they fare no better.[5] Relators allege they were punished by Novo Nordisk for drawing attention to and protesting Novo Nordisk's sales practices. Relator Puckett alleges that Novo Nordisk reduced his compensation, doubled his workload, and excluded him from new sales projects, while Relator Daniel alleges she was fired. *Id.* ¶¶ 102, 109. Novo Nordisk argues in response that Relators have not adequately alleged two key elements of an FCA retaliation claim: (1) that Relators engaged in protected activity, and (2) that Relators were retaliated against *because of* that protected activity. *See* Mot. at 28–31. Again, I agree with Novo Nordisk.

To state a claim for retaliation, Relators must plausibly allege they "engaged in protected activity" and were "retaliated against . . . because of that activity." *Singletary v. Howard Univ.*, 939 F.3d 287, 295 (D.C. Cir. 2019). Protected activity under the FCA takes two forms: (1) "lawful acts done in furtherance of" an FCA claim; and (2) "lawful acts done in furtherance of other efforts to stop" an FCA violation. *Id.* (cleaned up) (citing 31 U.S.C. § 3730(h)(1)). An employee's acts are "in furtherance" of an FCA claim if "she investigates matters that reasonably could lead to" a viable FCA case. *Id.* (cleaned up) (quoting *Hoyte v. Am. Nat'l Red Cross*, 518 F.3d 61, 66, 68–69 (D.C. Cir. 2008)). Under either form, the whistleblower's efforts must "pertain to fraud in connection with the

---

[5] Relators bring their retaliation claims under the federal FCA, 31 U.S.C. § 3730(h); the anti-retaliation provision of the Virginia Fraud Against Taxpayers Act, Va. Code Ann. § 8.01-216.8; and Virginia common law. *See* Compl. ¶¶ 389–400. The requirements for establishing a retaliation claim under these provisions are largely identical. *See United States ex rel. Oldham v. Centra Health, Inc.*, 548 F. Supp. 3d 568, 575 n.3 (W.D. Va. 2021). I will therefore analyze the retaliation claims together under federal law.

14

submission of a claim for federal government funds." *Id.* at 296. Put differently, the employee must have some "objectively reasonable belief that the employer is violating, or will violate, the False Claims Act," *id.*, though the employee need not be actively contemplating a *qui tam* suit, *see United States ex rel. Schweizer v. Oce N.V.*, 677 F.3d 1228, 1238 (D.C. Cir. 2012). Regardless, mere "[d]issatisfaction with one's treatment on the job is not enough." *Singletary*, 939 F.3d at 295.

Relators have not alleged that their actions "concern[ed] false or fraudulent claims submitted for federal funding." *Id.* (internal quotation marks omitted) (quoting *United States ex rel. Yesudian v. Howard Univ.*, 153 F.3d 731, 740 (D.C. Cir. 1998)). At most, they were investigating "mere regulatory noncompliance" without any connection to the submission of false claims. *Hoyte*, 518 F.3d at 68.

For example, Relator Daniel alleges she "strongly conveyed her concerns about the improper marketing" as part of her internal employee review. Compl. ¶ 100. But Relator Daniel never alleges that her concerns about "improper marketing" related to fraudulent claims against the government. Instead, her own statements indicate she was "frustrated" about how other employees' off-label marketing might impact her own sales numbers and, thus, "what might happen to [her]" during an upcoming corporate reorganization. Compl. Ex. H [Dkt. #1-1] (claiming she is "at a disadvantage because of" off-label sales). But "[c]omplaints about off-label marketing alone are not protected conduct unless the employee connects them in some fashion to false claims or fraud on the government." *United States ex rel. Lokosky v. Acclarent, Inc.*, 675 F. Supp. 3d 15, 24 (D. Mass. 2023). Based on the allegations in the complaint, Relator Daniel never made that connection.

15

For Relator Puckett, the story is the same. Relator Puckett alleges he complained to his manager about sales representatives "calling on Weight Loss Clinics and getting sales credits for prescriptions written by Weight Loss Doctors," stating this was "unethical" and "illegal." Compl. ¶ 107. But his concern was about the impact of those off-label sales on "year end reviews and lay off determinations," not on the submission of false claims. Compl. Ex. K [Dkt. #1-3]. Nowhere in his complaints does Relator Puckett assert that the practice is unlawful, much less that it is leading to fraud against the government. Without any "attendant fraud" or "reasonable belief that [their] employer was . . . engaged in fraud against the government," Relators were "not engaged in protected activity under the FCA by complaining about the company's marketing alone." *Lewis v. Abbvie*, 2024 WL 4554050, at *4 (N.D. Ind. Oct. 22, 2024), *aff'd*, 152 F.4th 807 (7th Cir. 2025).

Relators include some limited allegations in the complaint about their *post facto* calculations of government reimbursements based on the alleged off-label promotion scheme. *See* Compl. ¶¶ 93–97, 125; Opp'n at 28. But there is no allegation of *when* Relators made these calculations or that the calculations were part of the investigations that allegedly led to their demotion and termination. And ultimately the "relevant inquiry is not whether the off-label sales generated false claims, but rather whether [Relators'] conduct, including reports, complaints, objections, investigations, or the like, 'concerned the submission of false claims.'" *Lokosky*, 675 F. Supp. 3d at 24 (quoting *United States ex rel. Booker v. Pfizer, Inc.*, 847 F.3d 52, 60 (1st Cir. 2017)). Here, because Relators' complaints did not relate to the submission of false claims, their retaliation claims must be dismissed.

16

## CONCLUSION

For the foregoing reasons, I will **GRANT** Novo Nordisk's request for judicial notice and **GRANT** Novo Nordisk's motion to dismiss the complaint without prejudice. A corresponding order will accompany this opinion.


RICHARD J. LEON
United States District Judge